UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN BATTAGLIA,<br><br>    Plaintiff,<br><br>  v.<br><br>MVC CAPITAL, INC., MICHAEL TOKARZ, JOHN CHAPMAN, PHILLIP GOLDSTEIN, GERALD HELLERMAN, DOUGLAS KASS, ROBERT KNAPP, SCOTT KRASE, and ART LIPSON,<br><br>    Defendants. | Case No. _____<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, John Battaglia ("Plaintiff"), by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel, as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This is an action brought by Plaintiff against MVC Capital, Inc. ("MVC" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with MVC, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) and Rule 14a-9, 17 C.F.R. § 240.14a-9.  Plaintiff's claims arise in connection with the proposed merger between MVC,  Barings BDC, Inc. ("Barings BDC"), Mustang Acquisition Sub, Inc. ("Acquisition Sub"), a direct wholly-owned subsidiary of Barings BDC, and Barings LLC ("Barings"), external investment adviser to Barings BDC ("Proposed Transaction").  Plaintiff also asserts a claim against the Individual Defendants for breaching their fiduciary duty of candor/disclosure under state law.

1

2. On August 10, 2020, MVC entered into an agreement and plan of merger with Barings BDC, Acquisition Sub, and Barings ("Merger Agreement"), whereby Acquisition Sub will merge with and into MVC, with MVC surviving the merger as a wholly-owned subsidiary of Barings BDC. Immediately after, MVC will merge with and into Barings BDC, with Barings BDC ultimately continuing as the surviving corporation.

3. Upon consummation of the Proposed Transaction, each share of MVC common stock will be converted into the right to receive: (i) $0.39492 in cash; and (ii) 0.94024 of a share of Barings BDC common stock ("Merger Consideration").

4. On November 24, 2020, in order to convince MVC public common shareholders to vote in favor of the Proposed Transaction, the Defendants authorized the filing of a materially incomplete and misleading Definitive Proxy Statement (the "Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

5. In particular, the Proxy contains materially incomplete and misleading information concerning: (i) the financial projections; (ii) the valuation analyses performed by the Company's financial advisor, JMP Securities LLC ("JMP"); and (iii) potential conflicts of interest with JMP in connection with the Proposed Transaction.

6. The special meeting for MVC shareholders to vote on the Proposed Transaction will be held on December 23, 2020 ("Shareholder Vote"). Therefore, it is imperative that the material information that has been omitted from the Proxy be disclosed prior to the Shareholder Vote, so MVC's shareholders can properly exercise their corporate voting rights.

7. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, unless and until the material information discussed below is disclosed to MVC shareholders sufficiently in

advance of the upcoming Shareholder Vote or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

9. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

10. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, MVC's common stock trades on the New York Stock Exchange ("NYSE"), which is headquartered in this District. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases). In addition, the Company's principal executive offices are located in this District at 287 Bowman Avenue, Purchase, NY 10577. Furthermore, MVC's legal counsel with respect to the Proposed Transaction, Kramer Levin Naftalis & Frankel LLP, is located in this District at 1177 Avenue of the Americas, New York, NY 10036.

**PARTIES**

11. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of MVC common stock.

12. Defendant MVC is a public company incorporated under the laws of Delaware with principal executive offices located at 287 Bowman Avenue, Purchase, NY 10577. MVC's common stock trades on the NYSE under the ticker symbol "MVC."

13. Defendant Michael Tokarz is, and has been at all relevant times, a director of the Company and Chairman.

14. Defendant John Chapman is, and has been at all relevant times, a director of the Company.

15. Defendant Phillip Goldstein is, and has been at all relevant times, a director of the Company.

16. Defendant Gerald Hellerman is, and has been at all relevant times, a director of the Company.

17. Defendant Douglas Kass is, and has been at all relevant times, a director of the Company.

18. Defendant Robert Knapp is, and has been at all relevant times, a director of the Company.

19. Defendant Scott Krase is, and has been at all relevant times, a director of the Company.

20. Defendant Art Lipson is, and has been at all relevant times, a director of the Company.

21. The defendants identified in paragraphs 13 through 20 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with the Company, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company, Barings BDC, and the Proposed Transaction**

22. MVC is a business development company specializing in equity, acquisition financing, mezzanine financing, management buyouts, leveraged buildups, corporate partnerships, PIPE transactions, going private transactions, private company recapitalizations, operational turnarounds, and growth and expansion capital transaction financing. The Company seeks to invest in mature, small, and middle-market companies. It seeks to invest in companies in the consumer products, business services, industrial manufacturing and services, automotive retailing, energy, food and food service, financial services, insurance, industrial distribution and value-added distribution, medical devices and equipment, specialty chemicals, and security sectors. MVC prefers to invest in companies based in the United States. The firm typically invests between $3 million and $25 million for control and non-control stakes in companies with revenues between $10 million and $150 million and EBITDA between $3 million and $25 million. It prefers to be the lead investor in transactions and also co-invests in companies with other private equity sponsors. The Company invests in the form of preferred and common equity, and warrants or rights to acquire equity interests; bridge loans; term loans; debt; cash flow loans; senior and subordinated loans; convertible securities; venture capital; mezzanine; and private equity investments. It exits its investments in the form of maturity of loan, public offering, sale, mergers and acquisitions, and financial recapitalizations. It prefers to take majority stake in companies.

23. Barings BDC is a publicly traded, externally managed investment company that has elected to be treated as a business development company under the Investment Company Act of 1940. Barings BDC seeks to invest primarily in senior secured loans to private U.S. middle-market companies that operate across a wide range of industries. It specializes in mezzanine, leveraged buyouts, management buyouts, ESOPs, change of control transactions, acquisition financings, growth

financing, and recapitalizations in lower middle market, mature, and later stage companies. Barings BDC's investment activities are managed by its investment adviser, Barings LLC, a leading global asset manager based in Charlotte, NC with over $335 billion of AUM firm-wide.

24. According to the August 10, 2020, joint press release announcing the Proposed Transaction:

> **MVC CAPITAL, INC. TO MERGE WITH BARINGS BDC, INC.**
> *Combined Company To Be Managed by Barings LLC*
>
> **CHARLOTTE, N.C., & PURCHASE, N.Y., August 10, 2020** - Barings BDC, Inc. (NYSE: BBDC) ("Barings BDC") and MVC Capital, Inc. (NYSE: MVC) ("MVC Capital") announced today that they have entered into a definitive merger agreement under which MVC Capital will merge with and into Barings BDC (the "Transaction"). The combined company, which will remain externally managed by Barings LLC, is expected to have more than $1.2 billion of investments on a pro forma basis. The boards of directors of both companies, the MVC Capital Strategic Review Committee, the independent directors of MVC Capital and the independent directors of Barings BDC have unanimously approved the Transaction, which is expected to close in the fourth quarter of 2020.
>
> Under the terms of the merger agreement, MVC Capital stockholders will receive aggregate consideration of approximately $177.5 million in the form of cash and stock consideration based on Barings BDC's June 30, 2020 net asset value ("NAV") representing total book value consideration of $10.01 per fully diluted MVC Capital share. On a market value basis, based on the closing price of Barings BDC common stock on August 10, 2020, the Transaction represents total consideration for MVC Capital stockholders of $145.5 million or approximately $8.21 per share, representing a premium of 21% to MVC Capital's closing price on August 10, 2020.
>
> MVC Capital stockholders will receive 0.94024 Barings BDC shares for each MVC Capital share, resulting in approximately 16.7 million newly issued Barings BDC shares, having total value of $170.5 million, or $9.62 per share, based on Barings BDC's June 30, 2020 NAV of $10.23 per share. In addition, Barings LLC will pay approximately $7 million in cash, or $0.39492 per share, directly to MVC Capital stockholders at closing. Following the Transaction, Barings BDC's equity base is expected to expand by $170 million and Barings BDC stockholders and MVC Capital stockholders are expected to own approximately 74.2% and 25.8%, respectively, of the combined company. The total value of the consideration to be received by MVC Capital stockholders at closing is subject to adjustment as set forth in the merger agreement and may be different than the estimated total consideration described herein depending on a number of factors, including the number of outstanding shares of Barings BDC and MVC Capital common stock, the payment of tax dividends by MVC Capital, undistributed investment company

> taxable income and undistributed net capital gains of MVC Capital and changes of the Euro-to-U.S. dollar exchange rate relating to certain of MVC Capital's investments between April 30, 2020 and the closing date.
>
> In addition, Barings LLC will enter into a credit support agreement ("CSA") with Barings BDC, for the benefit of the combined company, to protect against net cumulative unrealized and realized losses of up to $23.0 million on the acquired MVC investment portfolio over the next 10 years.
>
> Barings BDC will also provide up to $15.0 million in secondary-market support via accretive share repurchases over a 12-month period in the event the combined company's shares trade below a specific level of NAV per share following the completion of the first quarterly period ended after the consummation of the Transaction, subject to covenant and regulatory constraints (including Rule 10b-18 under the Securities Exchange Act of 1934).
>
> Barings BDC has agreed that, on the closing date, it will increase the size of its board of directors and cause one current member of the board of directors of MVC Capital, to be mutually selected by MVC Capital and Barings BDC to be appointed to the Barings BDC board of directors.
>
> In connection with the closing of the proposed Transaction, MVC Capital will repay all outstanding amounts under its existing credit facilities and any remaining obligations thereunder will be terminated. In addition, in connection with the closing of the proposed Transaction, Barings BDC intends to redeem MVC Capital's 6.25% senior notes due November 30, 2022 (NYSE: MVCD) with an aggregate principal amount outstanding of $95.0 million.

(Emphasis in original).

25. The Merger Consideration represents inadequate compensation for MVC shareholders. Proxy, 10, 19.

26. Therefore, it is imperative that the Company's shareholders receive the material information (discussed in detail below) that Defendants have omitted from the Proxy, which is necessary for them to properly exercise their corporate suffrage rights and cast an informed vote on the Proposed Transaction.

**The Proxy Omits Material Information**

27. Defendants filed a materially incomplete and misleading Proxy with the SEC, despite the Individual Defendants being obligated to carefully review the Proxy before it was filed with the

SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. Therefore, the Proxy should be amended prior to the Shareholder Vote, so the Company's shareholders can make an informed voting decision in connection with the Proposed Transaction.

28. First, the Proxy fails to provide the financial projections for the pro forma company (assuming consummation of the Proposed Transaction) for years 2020 through 2022 ("Pro Forma Projections").

29. In particular, the Proxy discloses projections for the Company and Barings BDC, while omitting the Pro Forma Projections. Proxy, 84-89. Omission of the Pro Forma Projections renders the Proxy materially incomplete and misleading because MVC shareholders will not have a good valuation picture of the combined company if the Proposed Transaction were consummated. Accordingly, the Company's shareholders must be provided with this information, so they can determine whether to vote in favor of the Proposed Transaction.

30. Unlike poker where a player must conceal his unexposed cards, the object of a proxy statement is to put all of one's cards on the table face-up. In this case, only some of the cards were exposed—the others were concealed. If a proxy statement discloses financial projections and valuation information, such projections must be complete and accurate. The question here is not the duty to speak, but liability for not having spoken enough. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. *See Campbell v. Transgenomic, et al.*, No. 18-2198 (8th Cir., March 1, 2019) (noting that "half-truths" are actionable misrepresentations under securities laws and collecting cases). Accordingly, Defendants have disclosed some of the projections, but have omitted the Pro Forma Projections.

31. Second, the Proxy omits material information regarding JMP's financial analyses with

8

respect to the Proposed Transaction.

32. The Proxy states that in connection with rendering its fairness opinion, JMP "reviewed certain publicly available research analyst price targets for Barings BDC," yet fails to disclose the specific research analyst price targets reviewed by JMP. Proxy, 77.

33. With respect to JMP's *Selected Public Companies Analysis* for MVC, the Proxy fails to disclose the individual multiples observed for each of the 17 selected companies. *Id.* at 80.

34. Similarly, MVC's *Selected Precedent M&A Transactions Analysis* fails to disclose the individual multiples observed for each of the 13 selected business development company M&A transactions. *Id.* at 81.

35. As for the *Dividend Discount Analysis* for MVC, the Proxy omits the following information: (i) the inputs and assumptions underlying the discount rates ranging from 14.5% to 16.5%; (ii) a range of implied present values of implied terminal values for MVC based on long-term price-to-NAV multiples; and (iii) the inputs and assumptions underlying the range of terminal multiples of 0.75x to 0.95x to MVC's estimated NAV as of July 31, 2022, used by JMP to derive the terminal values for MVC. *Id.*

36. Regarding JMP's *Management Liquidation Analysis* for MVC, the Proxy fails to disclose the inputs and assumptions underlying the selected range of NAV multiples of 0.60x to 0.74x. *Id.*

37. For MVC's *Premia Paid Analysis*, the Proxy omits the names of the 17 selected acquisitions, and the individual multiples observed for each of those acquisitions. *Id.* at 82.

38. With respect to JMP's *Selected Public Companies Comparable Data* for Barings BDC, the Proxy fails to disclose the individual multiples observed for each of the 14 selected companies. *Id.* at 82-83.

39. Finally, for Barings BDC's *Dividend Discount Analysis*, the Proxy omits: (i) the inputs

9

and assumptions underlying the discount rates ranging from 14.0% to 16.0%; (ii) a range of implied present values of implied terminal values for Barings BDC based on long-term price-to-NAV multiples; and (iii) the inputs and assumptions underlying the range of terminal multiples of 0.80x to 1.00x to Barings BDC's estimated NAV as of July 31, 2022, used by JMP to derive the Barings BDC terminal values. *Id.* at 83.

40. Third, the Proxy fails to disclose information regarding potential conflicts of interest with JMP in connection with the Proposed Transaction, which renders the Proxy materially misleading.

41. To start, the Proxy states that MVC will pay JMP an aggregate fee of $750,000 for its financial advisory services regarding the Proposed Transaction, and that a portion of that aggregate fee is contingent upon consummation of the Proposed Transaction. *Id.* at 83. However, the Proxy fails to disclose the exact amount of the aggregate fee that is contingent upon consummation of the Proposed Transaction.

42. Further, JMP and its affiliates have previously provided investment banking and other financial services to MVC (i.e. acted as agent for share repurchases) and have received compensation from MVC as a result. *Id.* However, the Proxy fails to disclose all of the services JMP provided to the Company prior to the Proposed Transaction, and the amount of compensation JMP received.

43. Finally, the Proxy fails to disclose whether JMP provided financial services to Barings BDC prior to JMP's involvement in the Proposed Transaction.

44. In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the upcoming Shareholder Vote concerning the Proposed Transaction, Plaintiff will be unable to make an informed decision regarding whether to vote his shares in favor of

the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CAUSES OF ACTION

### COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9)**

45.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

46.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

47.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

48.     The omission of information from a proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

49.     Defendants have issued the Proxy with the intention of soliciting the Company's public common stockholders support for the Proposed Transaction.  Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical

information regarding, amongst other things: (i) the financial projections; (ii) the valuation analyses performed by JMP; and (iii) potential conflicts of interest with JMP in connection with the Proposed Transaction.

50. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

51. The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that JMP reviewed and discussed its financial analyses with the Individual Defendants, and further states that the Individual Defendants considered the financial analyses provided by JMP, as well as its fairness opinion and the assumptions made and matters considered in connection therewith. Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review JMP's analyses in connection with their receipt of the fairness opinions, question JMP as to its derivation of fairness, and be

particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

52. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

53. MVC is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

54. The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

55. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

56. The Individual Defendants acted as controlling persons of MVC within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of MVC, and participation in and/or awareness of the Company's operations and/or intimate

knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

57. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

58. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

59. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

60. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

61. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these

defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

62.  Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT III

**(Against the Individual Defendants for Breach of Fiduciary Duty of Candor/Disclosure)**

63.  Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

64.  By virtue of their role as directors and/or officers of the Company, the Individual Defendants directly owed Plaintiff and all Company shareholders a fiduciary duty of candor/disclosure, which required them to disclose fully and fairly all material information within their control when they seek shareholder action, and to ensure that the Proxy did not omit any material information or contain any materially misleading statements.

65.  As alleged herein, the Individual Defendants breached their duty of candor/disclosure by approving or causing the materially deficient Proxy to be disseminated to Plaintiff and the Company's other public shareholders.

66.  The misrepresentations and omissions in the Proxy are material, and Plaintiff will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Where a shareholder has been denied one of the most critical rights he or she possesses—the right to a fully informed vote—the harm suffered is an individual and irreparable harm.

67.  Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that

Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Shareholder Vote or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

B. Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: December 10, 2020                                **MONTEVERDE & ASSOCIATES PC**

/s/  Juan E. Monteverde
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel:(212) 971-1341
Fax:(212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*